

**U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS**

**ENTERED**

**TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET**



**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**United States Bankruptcy Judge**

**Signed March 23, 2011**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK AND SAN ANGELO DIVISIONS

| | | |
|---|---|---|
| IN RE: | § § | |
| IRINEO OLIVAS SALAZAR AND<br>LEONOR MARTINEZ SALAZAR,<br><br>DEBTORS | § § § § § | Case No. 10-50360-RLJ-13 |
| | § § | |
| RAYMOND ANTHONY JANSSEN AND<br>SUSAN GONZALES JANSSEN,<br><br>DEBTORS | § § § § § | Case No. 10-50361-RLJ-13 |
| | § § | |
| MICHAEL WAYNE DANIEL AND<br>SUSAN LYNN DANIEL,<br><br>DEBTORS | § § § § § | Case No. 10-50362-RLJ-13 |

-1-

| | | |
|---|---|---|
| RUDY JOE BARRON AND<br>PATRICIA LYNN BARRON,<br><br>　　　　DEBTORS | §<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 10-50363-RLJ-13 |
| OSBALDO ORNELAS,<br><br>　　　　DEBTOR | §<br>§<br>§<br>§<br>§ | Case No. 10-50367-RLJ-13 |
| TIMOTHY TERRY MCCLAIN AND<br>GELAINE LORA MAE MCCLAIN,<br><br>　　　　DEBTORS | §<br>§<br>§<br>§<br>§<br>§ | Case No. 10-50368-RLJ-13 |
| JOHNNY RODRIGUEZ AND<br>ARGELIA MURILLO RODRIGUEZ,<br><br>　　　　DEBTORS | §<br>§<br>§<br>§<br>§<br>§ | Case No. 10-50375-RLJ-13 |
| JULIAN GONZALES PINEDA AND<br>ANDREA MARIE PINEDA,<br><br>　　　　DEBTORS | §<br>§<br>§<br>§<br>§<br>§ | Case No. 10-60232-RLJ-7 |
| KAREN RADINE PHELPS<br><br>　　　　DEBTOR. | §<br>§<br>§<br>§<br>§ | Case No. 10-60233-RLJ-7 |

## **MEMORANDUM OPINION**

The Court considers the objections to exemptions made by the Chapter 13 trustee, Robert Wilson (Wilson), in the referenced Chapter 13 cases, and by the case trustee, Harvey Morton (Morton), in the referenced Chapter 7 cases. Hearing was held on the seven Chapter 13 cases on November 17, 2010, and on the two Chapter 7 cases on February 3, 2011. The Court has consolidated the cases for purposes of this Memorandum Opinion.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b); this is a core proceeding under 28 U.S.C. § 157(b)(2). This Memorandum Opinion contains the Court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052.

The Court sustains the objections with the debtors retaining a right to amend their exemption claims to comply with the applicable statute.

## **Background**

In each of these bankruptcy cases, the debtors have listed the value of their claimed exemptions (the third column on the standard form) as "100% of FMV," FMV being the acronym for "fair market value." In all but the Salazar (case no. 10-50360) and Janssen (case no. 10-50361) cases, the debtors have elected the federal exemptions under section 522(d) of the Bankruptcy Code. The Salazars and the Janssens have claimed exemptions under Texas law. In each of the Chapter 13 cases—Salazar, Janssen, Daniel, Barron, Ornelas, McClain, and Rodriguez—the debtors have stated an actual dollar amount for the value of each of their claimed exemptions in addition to the "100% of FMV" claim. For each of the cases, the Court refers to Schedule C, which identifies the debtors' exemption claims.

The standing Chapter 13 trustee in each of the Chapter 13 cases, Wilson, and the case trustee in the two Chapter 7 cases, Morton, have objected to the "100% of FMV" claim by the

debtors. The trustees contend that such claim is improper and should be disallowed. The debtors submit that their exemption claims are indeed proper as they are made in accordance with the perceived directive from the Supreme Court in *Schwab v. Reilly*, __ U.S. __, 130 S. Ct. 2652 (2010). As the trustees do not otherwise dispute their exemption claims, the debtors each contend their exemptions should be allowed.

In the Chapter 13 cases, Wilson submits that he relies upon the debtors' schedules, specifically the dollar amounts and values stated for the exemption claims, in determining whether debtors satisfy the liquidation analysis under Chapter 13, i.e., that they are proposing a plan that will pay creditors as much as creditors would receive under Chapter 7. *See* 11 U.S.C. § 1325(a)(4). Wilson submits that he must rely upon the debtors' information for this purpose because the confirmation process takes place prior to completion of the exemption process. The trustee also points out that his objections are made to preserve potential claims by a Chapter 7 trustee in the event any of the cases are converted to Chapter 7.

In the two Chapter 7 cases, Pineda and Phelps, Morton and the debtors have stipulated that the trustee does not dispute that the values listed on the debtors' schedules "are reasonably equivalent to the actual fair market values of the assets listed." Stipulation of Facts and Legal Issues ¶ 5 [Dkt #23 of Pineda and Dkt #24 of Phelps]. In this regard, despite their exemption claims of "100% of FMV," they placed a value for each item in a specific dollar amount in schedules A and B, which list the debtors' real and personal property, respectively. The parties further stipulated that "each of the [d]ebtors could not identify any asset or assets from their exempted property on schedule C as an asset that might appreciably increase in value." *Id*. ¶ 7.

**Discussion**

I.

Both the debtors' exemption claims and the trustees' objections are a reaction to the Supreme Court's decision in *Schwab*. *Schwab* concerns a Chapter 7 debtor, Reilly, who claimed her cooking and kitchen equipment as exempt under the "tools of the trade" and "wildcard" exemptions allowable under subsections (d)(6) (tools of the trade) and (d)(5) (wildcard) of section 522(d) of the Bankruptcy Code. In particular, Reilly exempted $1,850.00 in equipment under subsection (d)(6), which allows an exemption of the "debtor's aggregate interest, not to exceed $1,850 in value," in tools of the trade; and $8,868.00 in equipment under subsection (d)(5), which permits a debtor to take a "wildcard" exemption equal to the "debtor's aggregate interest in any property, not to exceed" $10,225.00 in value.[1] The total value of the two exemption claims, $10,718.00, equals the value Reilly placed on the same items as listed on Schedule B (personal property of the debtor) and the last column of Schedule C (the column that calls for the current market value of the property claimed exempt without deducting the exemption). In short, the amount of each of Reilly's exemption claims was the same as the value listed for each of the items.

The trustee, Schwab, did not object to Reilly's exemptions though he was apparently aware of an appraisal on the equipment revealing that the value of the equipment may be as much as $17,200. Despite having filed no timely objection to Reilly's exemptions, Schwab subsequently moved the bankruptcy court for permission to auction the equipment so he could realize for the

---

[1] Pursuant to 11 U.S.C. § 104(a), the dollar amounts under section 522(d) of the Bankruptcy Code are adjusted every three years. The dollar amounts shown above for subsections d(5) and d(6) were the limits in place at the time Reilly filed her April 2005 petition.

bankruptcy estate the excess value as revealed in the appraisal. Reilly objected, contending that she obviously intended to exempt the full value of her equipment, and since Schwab had failed to timely object to her exemption claim, the estate had forfeited any claim to her equipment. The bankruptcy court denied Schwab's motion to auction the equipment, which was affirmed by both the district court and the court of appeals. *Id.* at 2659. The Supreme Court stated that the issue before it was as follows:

> [W]hether an interested party must object to a claimed exemption where, as here, the Code defines the property the debtor is authorized to exempt as an interest, the value of which may not exceed a certain dollar amount, in a particular type of asset, and the debtor's schedule of exempt property accurately describes the asset and declares the "value of [the] claimed exemption" in that asset to be an amount within the limits that the Code prescribes.

*Id.* at 2657. The Supreme Court reversed the lower courts, holding that, "in cases such as this, an interested party need not object to an exemption claimed in this manner in order to preserve the estate's ability to recover value in the asset beyond the dollar value the debtor expressly declared exempt." *Id.*

II.

Central to the Supreme Court's decision is its conclusion that Reilly's exemption claims under §§ 522(d)(6) and (d)(5) go to her *interest*, up to a dollar amount, in the particular asset described and not the asset itself. Its analysis tracks the statute's scheme. Section 522(l) provides that a debtor shall file a list of property that the debtor claims as exempt under subsection (b) of section 522 and, unless a party in interest objects, the property claimed as exempt is exempt. The

debtor thereby reclaims such property from the bankruptcy estate to which it had passed upon filing. *Id.*; *see* § 541.[2]

Subsection (b) directs the debtor's exemption choice, which is dependent in part on the debtor's state of residence. Individuals filing bankruptcy in Texas may elect either the list of exemptions set forth at § 522(d) of the Bankruptcy Code, i.e., the federal exemptions, or the exemptions allowable under Texas state law. As stated, Reilly selected the federal exemptions. The majority of the exemptions allowed at subsection (d) of the Bankruptcy Code refer to the "debtor's aggregate interest," not to exceed a certain amount "in [the applicable asset]." § 522(d).[3] Noting that Reilly's exemption claims under subsections (d)(5) and (d)(6) were strictly limited to her interest in the property rather than the property itself, the Supreme Court stated as follows:

> The portion of § 522(l) that resolves this case is not, as Reilly asserts, the provision stating that the "property claimed as exempt on [Schedule C] is exempt" unless an interested party objects. Rather, it is the portion of § 522(l) that defines the target of the objection, namely, the portion that says Schwab has a duty to object to the "list of property that the debtor claims as exempt *under subsection (b)*." (Emphasis added.) That subsection, § 522(b), does *not* define the "property claimed as exempt" by reference to the estimated market value on which Reilly and the Court of Appeals rely. [citation omitted]. Section 522(b) refers only to property defined in § 522(d), which in turn lists 12 categories of property that a debtor may claim as exempt. As we have recognized, most of these categories (and all of the categories applicable to Reilly's exemptions) define the "property" a debtor may "clai[m] as exempt" as the debtor's "interest"-up to a specified dollar amount-in the assets described in the category, *not* as the assets themselves.

---

[2]Section 541 of the Bankruptcy Code provides that upon the filing of a bankruptcy case, "an estate" is created and that all the debtor's legal or equitable interest in property passes to the bankruptcy estate.

[3]It is interesting to note that in some instances the statute refers to the debtor's "aggregate interest," while in other instances it refers to simply the debtor's "interest." *Cf.* 11 U.S.C. § 522(d) subsections (1), (4), (5), (6), and (8) (all of which refer to the debtor's "aggregate interest"), with subsections (2) and (3) (both of which refer to the debtor's "interest").

*Id.* at 2661-62. The "target" of the trustee's objection, therefore, was the dollar amount of Reilly's interest in the equipment.

Asserting the same amount for the debtor's interest as is claimed for the value of the asset itself does not mean the debtor is making a claim to the asset itself, or an "in-kind" claim. *Id.* at 2663 n.10. The value of the asset is therefore not particularly relevant to the exemption claim. Accordingly, where the statute limits the exemption claim to an interest in property, in determining whether an objection to the debtor's exemption claim is needed, the trustee (or other party in interest) need only look to three entries on the debtor's schedules: (1) the description of the property in which the exemption interest is claimed; (2) the Code provisions governing the claimed exemptions; and (3) the amounts listed for the exemptions (or, per the form, the amounts listed in the column titled "Value of Claimed Exemption"). *Id.* at 2663.

Since the value of the claimed exemptions in *Schwab* were within the statutory amounts, the trustee was not obligated to object to the exemption claims to preserve his rights in the assets in-kind. The trustee therefore retained the right to sell the equipment to realize the excess value in the equipment for the benefit of the bankruptcy estate.

The Supreme Court addressed its prior opinion in *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992), in which it held that a failure to object to a debtor's claimed exemptions within thirty days after the § 341 creditors' meeting, as required by Rule 4003 of the Federal Rules of Bankruptcy Procedure, "exclude[s] the subject property from the estate even if the exemption's value exceeds what the Code permits." *Schwab*, 130 S. Ct. at 2658. In *Taylor*, the debtor claimed the exemption amount as "unknown." Such a claim "raises a flag" to parties in interest that the debtor is not making a definitive exemption claim within the allowed statutory limit for the

exemption. *Id*. As parties are on notice of a potentially improper exemption claim, they must object to the claim to prevent the claimed exempt property (or interest in the property) from leaving the estate. *See* §§ 541, 522(b)(1), 522(l); *Schwab*, 130 S. Ct. at 2658; *Taylor*, 503 U.S. at 642-43.

A warning or notice flag was not raised in *Schwab*. The exemption claim amount was within the statutory limit and, in accordance with the statute, the debtor's exemption claim is limited to the debtor's interest in the asset rather than the asset itself. Accordingly, in deciding whether to object to the exemption claim, the trustee (or other interested parties) need not be concerned with the in-kind value of the asset as the asset does not leave the estate; if the value of the asset in-kind is in fact greater than the amount scheduled, the trustee retains the right to administer the asset for the estate's benefit. He must simply account back to the debtor for the debtor's interest.

### III.

The angst expressed by both the debtors and trustees in the cases before the Court concerns what they perceive the Supreme Court to have recommended in *Schwab* when addressing Reilly's desire to retain the asset rather than merely an interest in the asset. Reilly ran a catering business; she needed the cooking equipment, not a payment for her interest in the equipment. On this point, Justice Thomas, writing for the majority, stated as follows:

> Where, as here, it is important to the debtor to exempt the full market value of the asset or the asset itself, our decision will encourage the debtor to declare the value of her claimed exemption in a manner that makes the scope of the exemption clear, for example, by listing the exempt value as "full fair market value (FMV)" or "100% of FMV." Such a declaration will encourage the trustee to object promptly to the exemption if he wishes to challenge it and preserve for the estate any value in the asset beyond relevant statutory limits. If the trustee fails to object, or if the trustee objects

>and the objection is overruled, the debtor will be entitled to exclude the full value of the asset. If the trustee objects and the objection is sustained, the debtor will be required either to forfeit the portion of the exemption that exceeds the statutory allowance, or to revise other exemptions or arrangements with her creditors to permit the exemption. See Fed. Rule Bkrtcy. Proc. 1009(a). Either result will facilitate the expeditious and final disposition of assets, and thus enable the debtor (and the debtor's creditors) to achieve a fresh start free of the finality and clouded-title concerns Reilly describes.

*Schwab*, 130 S. Ct. at 2668.

Claiming "100% of FMV" tells the world that the debtor is, in effect, seeking to reclaim the asset itself. The variable that potentially frustrates the debtor, however, is the actual value of the property. If the debtor, as in *Schwab*, claims a specific dollar amount and the value of the property is in fact significantly greater than what is claimed or its value increases significantly during the pendency of the bankruptcy case, the debtor runs the risk of losing the property as the trustee may, in such instances, choose to administer the property to realize its excess value. If, however, the debtor simply asserts, as the Supreme Court predicts, "100% of FMV," the debtor is stating that regardless the value in-fact at any time, he is asserting such full value as his exempt interest. Therefore if no objection is timely filed, the trustee or other parties in interest are barred from later questioning the debtor's exemption claim. *See Taylor*, 503 U.S. at 644; Fed. R. Bankr. P. 4003(b).

IV.

*Schwab*'s effect is clear if an objection is *not* timely filed to an exemption claim that raises the flag—by, for example, claiming "unknown" or "100% of FMV": the debtor effectively reclaims the property.[4] The parties in the cases here present the Court with a circumstance that

---

[4] As discussed below, this does not mean, however, that legal title to the asset passes back to the debtor.

-10-

raises the question of what happens when debtors claim "100% of FMV" and the trustee timely objects to such claim. What then?

There are at least a couple of ways for the Court to treat the joined issue. As outlined by the court in *In re Moore*, No. 10-44352, 2010 WL 5397193, at *2 (Bankr. N.D. Tex. Dec. 29, 2010) (Lynn, J.), an evidentiary hearing may be held at which the debtor has the burden of going forward to establish at least a "plausible basis for the claim that '100% of FMV' of an asset falls within the statutory limit on the amount that may be exempted." *Id*. The trustee, as the objecting party, then has the burden of proving that the claimed exemption exceeds the statutory limit. If it does not, the objection is overruled and the "asset claimed will no longer be part of the estate." *Id*. at *2.

Another approach is for the Court to simply declare that an objection to an exemption claim of "100% of FMV" is a facially valid objection because the debtor has failed to claim a set amount as contemplated by the exemption statute allowing the exemption.[5] The Court then sustains the objection unless the debtor amends his exemptions to claim a dollar amount for his exempt interest in the property. The Court believes the latter approach best recognizes the reasoning in *Schwab* and therefore obviously departs somewhat from the *Moore* approach. The Court also takes a somewhat different view than the *Moore* conclusion that, if upon evidentiary hearing the objection is overruled, the asset claimed will no longer be part of the estate.

The Court will set forth its reasons for the approach it adopts. First, the Court fails to see the necessity of a hearing under the circumstances as presented. The debtors' exemption claims

---

[5]This assumes, of course, that the objection is only to the "100% of FMV" claim as such claim fails to apprise the trustee or other parties in interest of a definitive amount being claimed.

are limited to an interest in the property.[6] The value of the property itself is relevant only to the extent that there is sufficient value to support the amount of the exemptible interest. If, as suggested by the Supreme Court, the debtor is trying to exempt the property in-kind rather than an interest in property, such goal may still be thwarted if, for example, the property subsequently appreciates in value. This is the very issue confronted by the Ninth Circuit in *In re Gebhart*, 621 F.3d 1206 (9th Cir. 2010). There the debtors made an exemption claim to the equity in their house, which amount was well within the amount they were allowed under § 522(d)(1).[7] The trustee did not object; like the trustee in *Schwab*, the trustee in *Gebhart* had no reason to object. During the pendency of the bankruptcy case, the house appreciated in value. Two years later, after the debtors had defaulted on their mortgage payments and the mortgage company moved for stay relief, the trustee sought approval to sell the house to recover the value of the house that then well exceeded the exemption claim. The Ninth Circuit, consistent with *Schwab*, emphasized that the debtors' allowable exemptions did not permit the exemption of the house itself, but rather the specific dollar amount of their interest in the house. The court stated as follows:

> The Supreme Court recently clarified in *Schwab v. Reilly* . . . that exemptions claimed under statutes like these are limited to the dollar value claimed in the exemption. Even when a debtor claims an exemption in an amount that is equal to the full value of the property as stated in the petition and the trustee fails to object, the asset itself remains in the estate, at least if its value at the time of filing is in fact higher than the exemption amount. *Id*. at 2661-62, 2666. Instead, what is removed from the estate is an "interest" in the property equal to the value of the exemption claimed at filing. *Id*. at 2660. The implications for the cases at issue here are clear: the fact that the value of the claimed exemption plus the amount of the encumbrances on the debtor's

---

[6] With respect to the cases before the Court, this portion of its analysis concerns only the cases in which the federal exemptions under § 522(d) were claimed.

[7] *Gebhart* concerned two bankruptcy cases in which the debtors asserted exemption claims. The Court restricts its review of the facts to one case.

-12-

> residence was, in each case, equal to the market value of the residence at the time of filing the petition did not remove the entire asset from the estate.

*Gebhart*, 621 F.3d at 1210.

*Schwab* concerned a debtor whose claim for the value of the property in which the exemption was made was wrong at the time the claim was made; its in-fact value at such time was greater. *Gebhart* concerns a situation in which the value of the property, presumably accurate at the time the exemption claim was made, increased post-filing of the bankruptcy. In both cases, excess value could potentially be realized for the estate. *Gebhart* addressed the argument made by the debtors that, under § 522(a)(2), the value of the property there (the house) was frozen as of the date of the bankruptcy petition. The *Gebhart* court clarified that "what is frozen as of the date of filing the petition is the value of the debtor's exemption, not the fair market value of the property claimed as exempt." *Id.* at 1211. The Ninth Circuit's construction of § 522(a)(2) is consistent with the Supreme Court's view of exemption claims under § 522(d). Section 522(a)(2) defines "value" with respect to prepetition property as meaning the fair market value as of the date of the filing of the petition. The property at issue is the debtor's exemption interest in property (or the property itself under certain provisions). This view accords with the general notion that the estate realizes any appreciated value in property subject of administration. A trustee in bankruptcy does not have to account back to the debtor to the extent property increases in value postpetition. If the debtor's particular exemption claim is limited to an interest in property, the trustee may realize the increased value of the property retained by the estate.

The Court acknowledges that the result in *Gebhart* appears harsh. Despite this, the Court believes *Gebhart* recognizes the full import of *Schwab*. *Gebhart* addresses the particular problem

that arises when property increases in value postpetition. The title to the property itself does not pass when a debtor can claim only an interest in the property. This was specifically recognized by the Supreme Court in *Schwab*. The Supreme Court, in addressing the "clouded-title argument" made by Reilly, stated that "it is far from obvious that the Code would 'entitle' Reilly to clear title in the equipment even if she claimed as exempt a 'full' or '100%' interest in it (which she did not)." *Schwab*, 130 S. Ct. at 2668 n.21. *Gebhart'*s holding confirms that title to the property itself does not pass.

Despite the perceived harshness of *Gebhart*, the Ninth Circuit offered a solution to this clouded-title issue and the practical desires of debtors who, for good reason, want to keep certain property in-kind. The Bankruptcy Code at section 554(b) provides that a party in interest may request that the court order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate. 11 U.S.C. § 554(b). The abandonment request forces the trustee to confront the very question of whether a particular asset has or will have any value worth administering. If the trustee is directed to abandon the property, the property in-kind then passes to the debtor and the *Gebhart* situation is avoided. Of course, a trustee may, at a hearing on abandonment, convince a court that the affected property may appreciate in value and that excess value can be realized.

The Court holds that an objection to an exemption claim of "100% of FMV" for an exemption to an allowable interest in property is a facially valid objection. Unless the debtor cures the exemption claim by amending it to place it within the statutory limit, the objection must be sustained. While an evidentiary hearing regarding the value of the property involved may be necessary to resolve certain types of objections to exemptions, a hearing on value is unnecessary if

the objection is limited to the manner in which the debtor has claimed the exemption.

V.

Upon considering the foregoing, the Court sets forth the analytical framework for assessing the propriety of the exemption claims made here.

First, section 541 of the Bankruptcy Code provides that, upon the filing of a bankruptcy case, an estate is created comprising all legal and equitable interests of the debtor in property. The debtor may exempt from the estate the property that he claims as exempt. *See* § 522(b). In fact, the debtor is instructed to file his list of exemptions, which is set forth on Schedule C of his bankruptcy schedules. *See* § 522(l). Generally, for a debtor residing in Texas, he may select exemptions allowable under Texas law or the exemptions provided in the Bankruptcy Code. *See* § 522(b).

The federal exemptions are set forth at § 522(d) of the Bankruptcy Code, which provides that, with respect to several of the allowed exemptions, the debtor may exempt an *interest*, not to exceed a stated amount, in the described property. The Texas exemptions scheme, however, refers not to interest in property but rather to property itself. *See* Texas Prop. Code § 42.001 & 42.002.

Any objection to the debtor's exemptions must be filed within thirty days of the § 341 creditors' meeting. *See* Fed. R. Bankr. P. 4003(b). If no objection is filed, the debtor's exemptions are reclaimed from the estate. *See Taylor*, 503 U.S. at 638, 642-43.

*Schwab* instructs debtors and other parties in interest that if a debtor selects the federal exemptions (exempting only an interest in property) and states an amount for the exemption that is within the statutory limitation, such debtor has successfully claimed his exempt interest but has

not exempted the property in-kind. The property remains in the estate subject to the trustee's administration and potential disposition. The trustee does not have to object to the exemption because the property itself is not the subject of the exemption and the value of the property is not relevant to the exemption claim. *Schwab* then predicts that debtors, as a way to make clear their desire to retain the asset in-kind, will state their exemption claim as "100% of FMV." Accordingly, if no objection is filed, then the debtor's exemption claim stands. But the important distinction to be made, as learned from *Schwab*, is that the debtor's exemption claim is still limited to his interest in the property. *Schwab* suggests that title to the property does not pass to the debtor even if no objection is filed. *See Schwab*, 130 S. Ct. at 2668 n.21.

VI.

In each of the cases before the Court in which the federal exemptions are claimed, the debtors have all asserted "100% of FMV" for their exemption claims. In the five Chapter 13 cases, the debtors, in addition to claiming "100% of FMV," have also stated a dollar amount for each exemption. Asserting both the dollar amount and "100% of FMV" serves to make the claim ambiguous and thus, in the Court's view, has the same effect as merely claiming "100% of FMV."

The trustee has objected. His objections challenge the propriety of the exemption claims. The Supreme Court in *Schwab* predicted such claims would likely draw objections. Claiming "100% of FMV" is the debtors' way of stating that they wish to keep the asset in-kind. While this is their desire, the Court must construe that such claim has the legal effect of claiming an interest in the property up to an amount that is determined by the fair market value of the property in-kind. Accordingly, if the trustee wishes to preserve for the estate any excess value—value over the amount of the statutory limit that may exist either at the time the exemption is claimed, as was

the case in *Schwab*, or any excess value that may exist as a result of an anticipated appreciation in the property, as happened in *Gebhart*—the trustee must object to the exemption claim itself. That is precisely what has been done here. The trustees' objections are facially valid. The objections do not otherwise contest the exemption claims. The Court certainly concedes that, given the items against which the exemptions were made and the claimed values of the items in-kind, it is highly unlikely that any of the items would ever achieve a value that would exceed the statutory limit for the exemption. Regardless, the Court recognizes the trustees' right to preserve this eventuality for the estates.

The Court will sustain the objections. The Chapter 13 debtors are entitled to amend their exemptions to bring their claims within the allowable amounts. *See* Fed. R. Bankr. P. 1009. Assuming they do, and assuming no objections are filed, the debtors' interests will pass to them. But, to be clear, in the unlikely event that an asset, an interest of which has been exempted by the debtor, appreciates in value to the point it exceeds the statutory limit, the trustee will still hold title to such asset. *Gebhart*, 621 F.3d at 1211.

VII.

The debtors in the other two Chapter 13 cases, *Salazar* and *Janssen*, each claimed exemptions under the Texas Property Code, which generally allows an individual to exempt specified items of personal property up to a maximum value of $30,000 (or $60,000 for a married couple). *See* Tex. Prop. Code § 42.001(a). As the Texas statute refers to property rather than an interest in property, it can be argued that the *Schwab* analysis is not applicable. *See Moore*, 2010 WL 5397193 at *1.

If *Schwab* is not applicable, then assuming an exemption claim is made and not timely

objected to, the property in-kind then passes to the debtor. The issue of whether title passes appears resolved in the debtor's favor given the exemption claim is to property and not to a component part of "property." If no objection is filed, the property is reclaimed regardless of its in-fact value. This means, therefore, that an exemption claim made in a way similar to the way it was made in *Schwab*—the amount of the exemption is the same as the value placed on the property itself—leads to a contrary result. In other words, the trustee must object to preserve value on the exempt items that, in the aggregate, exceed the $30,000 (or $60,000) limit. The Court believes it can use the *Schwab* analysis to reach this result, however. Under *Schwab*, the objecting party looks to three entries: the description of the property, the applicable exemption statute, and the amount claimed. The key component when Texas exemptions are selected is the Texas statute. Since the statute allows one to exempt property rather than an interest in property, the trustee is on notice that the value of the property is a relevant issue for purposes of the exemption claim. If he does not object to the exemption claim, the property passes and the trustee has nothing left to administer.

   The problem in the *Salazar* and *Janssen* cases, however, is that, like the cases in which the federal exemptions were selected, they have claimed "100% of FMV." As stated, value is a relevant inquiry. In *Schwab*, the amount claimed, as opposed to the value of the property, was the relevant information. The Salazars and Janssens are limited to items of property that have a value of no more than $60,000. Just as with the cases involving the federal claims, the Court is satisfied that their exemption claims cannot stand in the face of an objection. There is no evidence on

schedule C of what the value is.[8] Indeed, given the nature of the exemption claim, an evidentiary hearing is premature. The trustee's objection to the manner in which the exemption claims are made will be sustained. As with the federal exemption claims, the debtors in the *Salazar* and *Janssen* cases may amend their exemptions.

### End of Memorandum Opinion ###

---

[8]The Court recognizes that the debtors' schedules should otherwise provide a value for the property that they have claimed as exempt. The trustee and other parties in interest may very well rely upon such information in deciding *not* to object to an exemption claim of "100% of FMV."